USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: SEP 05 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JERRY HODGES,

    Plaintiff,

v.

JEFFERSON B. SESSIONS, III, *Attorney General of the United States*,

    Defendant.

No. 17-CV-4273 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Jerry Hodges, proceeding *pro se*, brings this action against Attorney General Jefferson B. Sessions, III, alleging that he has been discriminated against as an employee of the Bureau of Prisons, in violation of Title VII, the ADEA, the Rehabilitation Act of 1973, and Section 1981. Before the Court is Defendant's motion to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is granted.

## BACKGROUND[1]

Plaintiff Jerry Hodges is an employee of the Bureau of Prisons. *Hodges v. Attorney Gen. of U.S.*, 976 F. Supp. 2d 480, 484 (S.D.N.Y. 2013). He began his employment with the BOP as a corrections officer in 1993. *Id.* Plaintiff's allegations concern his treatment since March of 2012, following an absence related to health complications. Compl. 15, ECF No. 2. Upon his return to

---

[1] For purposes of deciding this motion, the Court accepts as true all facts alleged by Plaintiff. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). In so doing, the Court considers not only facts alleged in the Complaint, but also Plaintiff's two requests for Equal Employment Opportunity counseling, which he attached thereto, both of which contain substantial factual allegations. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d. Cir. 2002). Certain facts are also taken from an opinion resolving a previous lawsuit filed by Plaintiff, of which the Court may take judicial notice. *See Gertskis v. U.S. E.E.O.C.*, No. 11-CV-5380 (JMF), 2013 WL 1148924, at *1 (S.D.N.Y. Mar. 20, 2013).

work, Plaintiff's benefits were not re-instated until April of that year. Compl. 15.[2] Plaintiff found out much later, however, that they were only partially restored, as he never resumed receiving his full TSP benefits. Compl. 15. In 2015, Plaintiff claims, the BOP still had not "restore[d] [him] to [his] status prior to termination as well as restoring [his] TSP contributions." Compl. 23. He complained to the personnel department, but ultimately no remedial action was taken. Compl. 23.

Plaintiff also complains about the BOP's failure to promote him. In 2013, for instance, Plaintiff was informed that he would be temporarily promoted for a period of 90 days and was due to receive a commensurate salary increase. Compl. 15. But "[w]ithin a matter of a few weeks . . . the temporary promotion was rescinded." Compl. 15. The proffered reason was that Plaintiff had been implicated in an investigation, which he first learned about when the promotion was rescinded. Compl. 15. According to Plaintiff, he "immediately spoke with AW Hutchins and AW Rios, both [of] whom I respect and both quoted policy to me which is I cannot be denied a promotion unless I have [] sustained a charge." Compl. 15. Plaintiff was troubled by these events because, he claims, two other employees received promotions despite also being the subjects of investigations. Compl. 15. Plaintiff complained to a warden, but never heard back. Compl. 15.

Although Plaintiff was eventually cleared of any wrongdoing, he has never been promoted, even though he has been "put in the best qualified group [for lieutenant] several times." Compl. 23. In September of 2014, Plaintiff "received notices regarding a GL[-]09 Lieutenant position." Compl. 15. When he called to inquire about the positions, he was hung up on. Compl. 15. Subsequently, in 2015, Plaintiff received "two different notifications for [] job[s] [he] had applied for." Compl. 23. The first notification indicated that he was "put in the best qualified group" but

---

[2] Plaintiff's employment with BOP was temporarily terminated on July 20, 2011 because the agency determined that there were no positions at the MCC that were suitable in light of his physical ailments. *Hodges*, 976 F. Supp. 2d at 488. Plaintiff returned to work for the BOP in February of 2012. Hill Decl. ¶ 4, ECF No. 12.

2

not selected after reference checks were conducted. Compl. 23. The second notification indicated that he was not qualified. Compl 23. The failure to promote him is all the more egregious, in Plaintiff's view, in light of a 2014 incident in which he assisted a colleague who was calling for help due to difficulty breathing. Compl. 15. Another corrections officer, who later received a promotion, simply "stood in the sally port motionless." Compl. 15.

On March 29, 2016, Plaintiff asserts, he began thinking "that something [was] not right." Compl. 15. The impetus was that his co-workers had begun "making fun" of him because "[he] had been put in for awards by my Lieutenant and never received one award." Compl. 15. This joking by his co-workers occurred "almost daily." Compl. 23. "The joking became more regular when we realized that awards had been given to an employee that hadn't been to work in almost a year." Compl. 15. Plaintiff further recalls a conversation with a warden in which she said that Plaintiff "only did what they told [him] to do." Compl. 15.

## PROCEDURAL HISTORY

On April 14, 2016, Plaintiff emailed the BOP with a request for counseling with the Equal Employment Office ("EEO"). Hill Decl. ¶ 5. Plaintiff then submitted two formal requests for counseling, on April 22, 2016 and May 12, 2016, respectively. Compl. 16, 24. On June 20, 2016, the BOP provided Plaintiff with a notice of right to file a discrimination complaint. Hill Decl. ¶ 7. Plaintiff filed the operative complaint on June 6, 2017, ECF No. 2, which Defendant then moved to dismiss, ECF No. 10.[3]

---

[3] Plaintiff has previously filed two other lawsuits alleging workplace discrimination against the BOP. In both instances, the defendant was granted summary judgment. *See Hodges v. Holder*, 547 F. App'x 6, 6 (2d Cir. 2013) (summary order), *Hodges*, 976 F. Supp. 2d at 480.

**STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). When considering a Rule 12(b)(6) motion, courts "accept[] plaintiffs' plausible allegations as true and draw[] all reasonable inferences in their favor." *Fernandez v. Zoni Language Ctrs., Inc.*, 858 F.3d 45, 48 (2d Cir. 2017).

*Pro se* litigants are "entitled to some latitude in meeting these requirements, as [their complaints] are held to less stringent standards than formal pleadings drafted by lawyers." *Martinez v. Ravikumar*, 536 F. Supp. 2d 369, 370 (S.D.N.Y. 2008) (citation omitted). "Nonetheless, to withstand a motion to dismiss, a *pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face." *Santi v. City of New York*, No. 17-CV-4129 (GBD) (SN), 2018 WL 3084064, at *2 (S.D.N.Y. June 22, 2018) (citation omitted).

**DISCUSSION**

**I.   Failure to Exhaust**

Plaintiff asserts that he was discriminated and retaliated against on the basis of his race and gender in violation of Title VII; age in violation of the ADEA; and disability in violation of the Rehabilitation Act.[4] Under all three statutes, a litigant must exhaust available administrative

---

[4] Title VII is the exclusive remedy available to federal employees who allege discrimination on the basis of gender or race. *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 825–33 (1976). For this reason, to the extent Plaintiff

4

remedies in a timely fashion before bringing suit in federal court. *See Lucenti v. Potter*, 432 F. Supp. 2d 347, 356 (S.D.N.Y. 2006), *Rector v. U.S. D.O.J.*, No. 14-CV-1883 (CM), 2016 WL 7188135, at *5 (S.D.N.Y. Nov. 22, 2016).

"Timely exhaustion of administrative remedies requires that a federal employee comply with applicable EEOC guidelines." *Lucenti*, 432 F. Supp. 2d at 356–57 (S.D.N.Y. 2006). The relevant guidelines require that the "aggrieved person . . . initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105 (eff. Jan. 6, 2010). "Courts must strictly adhere to such procedural requirements for gaining access to the federal courts." *Lucenti*, 432 F. Supp. 2d at 357. Although they are not jurisdictional in nature, these requirements "are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1994).

Here, Plaintiff first requested EEO counseling on April 14, 2016.[5] Only acts occurring after February 28, 2016, therefore, are actionable. All of the events for which Plaintiff has provided a date occurred prior to February 8, 2016. Accordingly, Plaintiff may not bring an action in federal court on the basis of these allegedly discriminatory acts.[6] That leaves only those allegations for which Plaintiff has failed to allege specific dates of occurrence: (1) the failure to

---

asserts a Section 1981 claim, it is dismissed. *See, e.g., King v. U.S. Postal Serv.*, No. 01 Civ. 8876 (GEL), 2002 WL 1067825, at *3 (S.D.N.Y. May 29, 2002). Although Plaintiff did not check the box indicating that he is maintaining a Section 1981 claim, he wrote in the corresponding field of the standard form that his race is African-American.

[5] The Court drew this submission date from the declaration submitted in connection with Defendant's motion to dismiss. It is more favorable to Plaintiff, however, than the dates on which he formally requested counseling, as indicated by the forms he attached to the Complaint.

[6] Although it is true that the failure to exhaust is an affirmative defense, "[n]umerous courts in this district have found [such failure] to exhaust administrative remedies in the Title VII context sufficient grounds to grant a motion to dismiss pursuant to Rule 12(b)(6)." *Morgan v. Williams*, No. 09-CV-3288 (TPG), 2010 WL 1253464, at *2 (S.D.N.Y. Mar. 24, 2010) (collecting cases). Here, the basis for finding that Plaintiff has failed to exhaust is the date on which he sought EEO counseling in relation to the discrete acts he has identified. Notably, Plaintiff attached to the Complaint his two formal requests for counseling. It is thus apparent on the face of the Complaint that Plaintiff has failed to exhaust administrative remedies with respect to these discrete events.

give him an award for which he was repeatedly nominated; (2) the failure to fully restore his TSP benefits; and (3) the failure to promote. The Court does note, however, that otherwise time-barred events may still be considered as "background evidence in support of a timely [discrimination] claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).[7]

## II. Disparate Impact Claims

Turning to the merits, the Court will first consider the remaining adverse actions—other than the failure to promote, which is analyzed under a different standard—that allegedly constitute disparate treatment: the failures to give Plaintiff an award and to fully restore his TSP benefits.

"To defeat a motion to dismiss . . . in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). "The same standard governs ADEA claims, with one exception: the discriminatory animus must be a but-for cause, though it by no means must be the *sole* motivation." *Farsetta v. Dep't of Veterans Affairs*, No. 16-CV-6124 (DLC), 2017 WL 3669561, at *4 (S.D.N.Y. Aug. 24, 2017). To state a prima facie claim of disability discrimination under the Rehabilitation Act, Plaintiff must allege "(1) that he is a member of a protected class (i.e., that he is disabled), (2) that he was qualified for the position or benefit denied, (3) that he suffered an adverse employment action, and (4) facts providing at least minimal support for the proposition that the employer was motivated by discriminatory intent."

---

[7] Time-barred discrete events may also be timely to the extent they are part of a continuing violation—such as a hostile work environment claim—where part of the violation occurred within the limitations period. *See Petrosino v. Bell Atlantic*, 385 F.2d 210, 220 (2d Cir. 2004). Plaintiff, however, has failed to allege such a violation. While he marked the box indicating that he is asserting such a claim, he does not allege "that he was harassed at all—no evidence of intimidation, ridicule, or insult, let alone severe or pervasive intimidation, ridicule, or insult." *Magadia v. Napolitano*, 2009 WL 510739, at *17 (S.D.N.Y. Feb. 26, 2009), *aff'd*, 518 F. App'x 17 (2d Cir. 2013). Although Plaintiff mentions that his co-workers "joked" with him about the fact that he had not received an award, he does not allege that these jokes were hostile or based on one of his protected characteristics.

6

*Johnson v. N.Y.S. Office of Alcoholism*, No. 16-CV-9769 (RJS), 2018 WL 1353258, at *4 (S.D.N.Y. Mar. 13, 2018) (citing *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 767 (2d Cir. 2015)).

### A.  Adverse Employment Action

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Vega*, 801 F.3d at 85 (citation omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (citation and ellipses omitted).

Here, the failure to provide Plaintiff with an award clearly does not qualify as an adverse action. Plaintiff complains of not receiving "awards" despite claiming to have been nominated repeatedly by his supervisor. Plaintiff does not allege that these were monetary awards and a fair reading of the Complaint seems to indicate that they were in fact non-monetary due to the complete absence of any reference to monetary gain. Not receiving an award of this kind, moreover, does not even amount to a "mere inconvenience" or "an alteration of job responsibilities," which themselves are not sufficiently disruptive to constitute an adverse action. Rather, there must be some objective indicia of material disadvantage. *See Beyer v. Cty. of Nassau*, 524 F.3d 160, 164 (2d Cir. 2008). Indeed, even when a plaintiff asserts a subjective belief that he has been disadvantaged by the failure of supervisors to grant a non-monetary award—which Plaintiff has not done here—such an allegation still does not make out an adverse action. *See Ortiz v. Metro. Transp. Auth.*, No. 13-CV-1033 (VSB), 2014 WL 11460929, at *10–11 (S.D.N.Y. Sept. 30, 2014).

## B. Discriminatory Animus

The failure to fully restore Plaintiff's TSP benefits also does not give rise to a cognizable claim because Plaintiff has not alleged a sufficient causal connection. A plaintiff can satisfy this burden "through direct evidence of intent to discriminate, or by indirectly showing circumstances giving rise to an inference of discrimination. A plaintiff may prove discrimination indirectly either by meeting the requirements of *McDonnell Douglas* and showing that the employer's stated reason for its employment action was pretext to cover-up discrimination or by otherwise creating a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." *Vega*, 801 F.3d at 87 (citations omitted). "Direct evidence is typically in the form of remarks made about the plaintiff, or the protected class to which she belongs." *Farsetta*, 2017 WL 3669561, at *5. "At the pleadings stage, a plaintiff may also allege disparate treatment by pleading the more favorable treatment of employees not in the protected group, who are similarly situated in all material respects." *Id.* (citations omitted).

Plaintiff has not asserted the existence of a single fact suggesting that the failure to fully restore his TSP benefits were in any way related to one of his identified protected characteristics: race, gender, age, or disability. Plaintiff also fails to allege any evidence—direct or circumstantial—of discriminatory animus. There is, for instance, no allegation that a supervisor made discriminatory remarks to or about either Plaintiff or others of his protected classes. Indeed, other than citing the statutes pursuant to which he maintains his claims, Plaintiff's Complaint and EEO counseling forms are completely bereft of any mention of the protected classes to which he belongs. The failure to fully restore the TSP benefits could just have plausibly been a routine failure by BOP human resources personnel or Plaintiff could have been unfairly singled out, fairly or unfairly, for a reason having nothing to do with his membership in a class protected by federal

8

law. It is also entirely unclear how many of Plaintiff's colleagues encountered similar issues while employed by the BOP.

The Court is mindful of the leniency afforded *pro se* plaintiffs. But on this record, there is simply no way for the Court to conclude that Plaintiff has carried his burden, minimal as it is, even under the less onerous Title VII causation standard that requires only facts giving rise to an inference of discriminatory animus. *See id.* at *7 ("In sum, the complaint does not contain sufficient information from which to infer that any of the men or women it mentions were so similarly situated to [Plaintiff] that their treatment provides any basis from which to infer discriminatory intent."); *Delgado v. Triborough Bridge & Tunnel Auth.*, 485 F. Supp. 2d 453, 463 (S.D.N.Y. 2007) (dismissing racial discrimination claim where Plaintiff failed to plead "circumstances leading to a permissible inference of racial discrimination including: ethnically degrading terms, invidious comments about her protected group, or sufficient factual assertions that employees not in her protected group were favored"); *Roth v. Farmingdale Pub. Sch. Dist.*, 2016 WL 767986, at *6 (E.D.N.Y. Feb. 26, 2016) ("Plaintiff fails to allege anywhere in his amended complaint that he was discriminated against on the basis of his gender or sex, apart from checking off the box indicating such discrimination at the beginning of the complaint. Such allegations are, therefore, insufficient to state a claim of discrimination, even where the plaintiff is *pro se*.").

### III. Failure to Promote

The Court considers the failure to promote claim separately because it is analyzed under a different standard. "To plead a prima facie case for discriminatory failure to promote, a plaintiff must demonstrate (1) that he is a member of a protected class; (2) that he applied for a promotion to a position for which he was qualified; (3) that he was rejected for the position; and (4) after this

rejection, the position was filled by someone outside the protected class who was similarly or less well qualified than the plaintiff, or the employer kept the position open and continued to seek applicants." *Gordon v. City of New York*, No. 14-CV-6115 (JPO), 2015 WL 3473500, at *7 (S.D.N.Y. June 2, 2015) (citing *Yu v. N.Y.C. Hous. Dev. Corp.*, 494 F. App'x 122, 124–25 & n.4 (2d Cir. 2012) (summary order)).

The reasoning that is dispositive of Plaintiff's disparate impact claim governs here as well. As with that claim, there are simply no allegations of evidence—direct or circumstantial—of discriminatory intent. Indeed, Plaintiff has not provided a single timely allegation of a promotion for which he applied that was filled by a candidate outside one of his protected classes and who was similarly or less qualified, nor has he provided any other allegations evincing discriminatory animus. *See Osby v. City of New York*, No. 13-CV-8825 (TPG), 2016 WL 4372233, at *7 (S.D.N.Y. Aug. 15, 2016) ("For example, where [the *pro se* plaintiff] claims that her employer failed to promote her, the complaint is bare of facts supporting any connection between [plaintiff's] disability and her failure to be promoted."); *Burgis v. Dep't of Sanitation*, No. 13-CV-1011 (TPG), 2014 WL 1303447, at *6 (S.D.N.Y. Mar. 31, 2014) ("Plaintiffs include no facts to support their conclusory allegation that the Department's failure to promote them was the product of intentional discrimination."); *Somersett v. City of New York*, 679 F. Supp. 2d 468, 473 (S.D.N.Y. 2010) ("[Plaintiff] does not allege, nor are there sufficient facts from which to draw an inference, that she was not promoted based upon her age or race.").[8]

---

[8] Plaintiff does provide two examples of employees who were promoted despite being the subjects of investigations, in relation to his allegation that his temporary promotion was improperly rescinded because the articulated reason was that he had been named in an investigation. Plaintiff did not, however, timely exhaust administrative remedies as to this adverse action because he did not consult with the EEO within forty-five days of its occurrence in 2013. Even if this event were considered, Plaintiff has not provided a sufficient basis on which to conclude that the rescission was motivated by discriminatory animus. Although Plaintiff has identified two employees—one of whom was female—who allegedly received promotions despite being named in investigations, he has not provided any other information about those employees, nor has he even alleged that he applied for the promotions they received. *See Farsetta*, 2017 WL 3669561, at *6.

## IV. Retaliation

Plaintiff also indicated on the standard complaint form that he is asserting a retaliation claim. To the extent he in fact maintains such a claim, it is also dismissed. At the motion to dismiss stage for a Title VII retaliation claim, a plaintiff must allege "that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90. The same standard applies to retaliation claims brought pursuant to the ADEA, *see Chowdhury v. Sadovnik*, Nos. 17-CV-2613 & 17-CV-2614 (PKC), 2017 WL 4083157, at *6 (E.D.N.Y. Sept. 14, 2017), and the Rehabilitation Act, *see Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). Causation in this context should be judged by a but-for standard. *Vega*, 801 F.3d at 90.[9]

Plaintiff has failed to allege sufficient facts to survive Defendant's motion to dismiss. He has not alleged that a single adverse employment action was taken against him within the relevant forty-five day period preceding his EEO counseling *because* he protested activity he reasonably believed to constitute discrimination. *See Raymond v. City of New York*, No. 15-CV-06885 (LTS), 2018 WL 3148356, at *12 (June 27, 2018) ("[Plaintiff], however, fails to plead facts plausibly supporting an inference that these actions were taken '*because* he complained of or otherwise opposed discrimination,' *i.e.*, that these actions 'would not have occurred in the absence of a retaliatory motive.'" (quoting *Vega*, 801 F.3d at 91) (emphases in original)); *Jones v. Bloomingdale's*, No. 17-CV-1974 (RA), 2018 WL 1281819, at *5 (S.D.N.Y. Mar. 8, 2018) (dismissing *pro se* complaint where plaintiff failed to "allege[] any facts" showing that the negative

---

[9] It is an open question in this circuit whether the but-for standard applies to ADEA retaliation claims. *See Fried v. LVI Services, Inc.*, 500 F. App'x 39, 41–42 (2d Cir. 2012) (summary order); *Perez v. United Federal of Teachers (UFT) Union*, No. 15-CV-8023 (LAP), 2016 WL 10567967, at *2 n.3 (S.D.N.Y. Sept. 30, 2016). Given the similarity in the statutory language between ADEA discrimination and retaliation claims, however, it would seem inconsistent for the but-for standard to apply in the discrimination context but not to retaliation claims. *See Fried*, 500 F. App'x at 41–42.

11

references by his employer were made for retaliatory reasons); *Roth*, 2016 WL 767986, at *9 (dismissing *pro se* complaint where plaintiff failed to "allege[] that he engaged in any protected activity, or that any such activity was known by the defendant"). Indeed, aside from the previous lawsuits Plaintiff filed in 2009 and 2011—the last of which was finally resolved in September of 2013—it is difficult to discern a single instance in which he has protested discriminatory activity. To the extent those are in fact the episodes of opposition on which he relies, the temporal proximity, or lack thereof, with the timely adverse acts is fatal to his claim, particularly in light of the absence of any evidence of a retaliatory motive. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (dismissing retaliation claim where twenty months separated protected activity from purported adverse action); *Milner v. HRA Police Department/Agency*, No. 15-CV-6320 (VSB), 2018 WL 1583675, at * 7 (S.D.N.Y. Mar. 28, 2018) (dismissing *pro se* complaint where three years separated protected activity from adverse employment action); *Thomas v. iStar Fin., Inc.*, 438 F. Supp. 2d 348, 365–66 (S.D.N.Y. 2006) (granting defendant summary judgment where more than a year elapsed between protected activity and adverse act); *cf. Sassone v. Quartararo*, 598 F. Supp. 2d 459, 467 (S.D.N.Y. 2009) (denying motion to dismiss where five to six months separated the protected activity from all of the adverse acts); *Lindner v. Int'l Bus. Mach. Corp.*, No. 06-CV-4751, 2008 WL 2461934, at *7 (S.D.N.Y. June 18, 2008) (noting that "retaliation claims are rarely dismissed pursuant to Rule 12(b)(6) where the plaintiff has alleged a time period of less than one year between the protected activity and the alleged retaliatory conduct" (collecting cases)).

## V.  State and City Law Claims

Finally, Plaintiff also indicated in his Complaint that he was asserting "other" claims, without specifying under which laws such claims accrue. The two statutes specifically enumerated

in that section of the standard form—neither of which he specifically marked—are the New York State and New York City Human Rights Laws. To the extent Plaintiff intends to assert either or both causes of action, the Court declines to exercise supplemental jurisdiction.

Federal district courts have supplemental jurisdiction over non-federal law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court may, at its discretion "decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). The Supreme Court has instructed that, in deciding whether to exercise supplemental jurisdiction, a district court should balance the traditional "values of judicial economy, convenience, fairness, and comity." *Carnegie Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988). As a general rule, "if a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well." *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (citation omitted). Although the exercise of supplemental jurisdiction is discretionary, the ordinary case "will point toward declining jurisdiction over the remaining state-law claims." *In re Merrill Lynch Ltd. P'ship Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (citation omitted). Accordingly, the Court declines to exercise supplemental jurisdiction over any remaining claims.

## CONCLUSION

For the foregoing reasons, Defendant's motion is granted without prejudice. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry eight and to mail a copy of this Order to Plaintiff. Within thirty days, Plaintiff shall notify the Court whether he seeks to amend the Complaint and, if he elects to amend, explain how the changes will allow the Complaint to survive a renewed motion to dismiss.

SO ORDERED.

Dated: September 5, 2018
New York, New York

Ronnie Abrams
United States District Judge